UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CURTIS SANFORD, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:20-CV-00075-JAR |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Curtis Sanford's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons discussed below, the decision of the Commissioner will be affirmed.

**I.     PROCEDURAL BACKGROUND**

On September 8, 2017, Plaintiff protectively filed an application for DIB based primarily on his anxiety, depression, posttraumatic stress disorder ("PTSD"), insomnia, and reclusiveness. (Doc. 17-1 at ¶ 1; Tr. 142-48).[1] The alleged onset date of Plaintiff's disabilities is October 31, 2014. (Tr. 142). Plaintiff's application was initially denied on December 18, 2017. (Doc. 18-1 at ¶ 2; Tr. 102-08). Plaintiff then requested and was granted a hearing before an administrative law judge ("ALJ"), which took place on May 15, 2019. (Tr. 60-85). Plaintiff was represented by

---

[1] The Commissioner notes that the ALJ stated that Plaintiff protectively filed on August 17, 2017. (Doc. 18-1 at ¶ 1). Whether Plaintiff filed on August 17th or September 8th is immaterial to this Court's review.

counsel at the hearing, and the ALJ heard evidence from both Plaintiff and an impartial vocational expert ("VE").

After considering the testimony and record evidence, the ALJ issued a written decision denying Plaintiff's application on August 21, 2019. (Tr. 12-21). On February 12, 2020, the Appeals Council of the Social Security Administration ("SSA") denied Plaintiff's request for review. (Tr. 1-8). Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000). Plaintiff filed this appeal on April 16, 2020. (Doc. 1). The Commissioner filed an Answer on September 18, 2020. (Doc. 12). Thereafter, Plaintiff filed a Brief in Support of the Complaint (Doc. 17), the Commissioner filed a Brief in Support of the Answer (Doc. 18), and Plaintiff filed a reply. (Doc. 19).

## II.   FACTS

The Court adopts Plaintiff's Statement of Material Facts (Doc. 17-1) to the extent they are admitted by the Commissioner. (Doc. 18-1). The Court further adopts the Commissioner's Statement of Additional Facts (Doc. 18-2) to the extent they are admitted by Plaintiff. (Doc. 19-1). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional facts will be discussed as necessary to address the parties' arguments.

## III.   LEGAL STANDARD

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. *Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018); *see also Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough that a reasonable mind would accept it as adequate to support the Commissioner's conclusion. *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (per curiam)). The

Court defers heavily to the findings and conclusions of the SSA. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)). The Court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided differently. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016). In other words, this Court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

Under the SSA regulations, an individual is disabled if they have an inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505. The SSA has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the regulations ("Listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history, and the process is complete. *Id.*

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his or her impairments. SSR 96–8p. At step four, the ALJ must determine whether, given the RFC, the claimant can return to his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Perks v. Astrue*, 687 F.3d 1086, 1091–92 (8th Cir. 2012). If the claimant can still perform past relevant work, he or she is not disabled. If not, the ALJ proceeds to step five to determine whether the claimant is able to make an adjustment to other work in light of his or her RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he or she is disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Through step four, the burden remains with the claimant to prove he or she is disabled. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012). "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Harris v. Barnhart*, 356 F.3d 926, 931 n. 2 (8th Cir. 2004).

**IV.    DECISION OF THE ALJ**

After finding that Plaintiff had not engaged in substantial gainful activity since the alleged date of disability onset, the ALJ determined that Plaintiff suffered from the following severe impairments: major depressive order; generalized anxiety disorder; antisocial personality disorder; and PTSD. (Tr. 14). The ALJ found that no impairment or combination of impairments met or medically equaled a Listing. (Tr. 15-16). Based on the medical record before him and Plaintiff's

hearing testimony, the ALJ found that Plaintiff had the RFC to perform the full range of work at all exertional levels but with certain non-exertional limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to work involving simple, routine tasks and simple work-related decisions. He cannot interact with the public. He can occasionally interact with coworkers and supervisors. (Tr. 16).

Plaintiff had past relevant work as a Boat Mate, but the ALJ determined that Plaintiff could no longer perform this work given the RFC. (Tr. 19-20). Accordingly, the ALJ proceeded to step five. Considering Plaintiff's age, education, work experience, and RFC, and relying on the VE's testimony, the ALJ concluded that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (Tr. 20-21). Specifically, and in accordance with the Dictionary of Occupational Titles ("DOT"), the ALJ determined that Plaintiff would be able to perform the requirements of a Dishwasher, Salvage Laborer, and Automobile Detailer. (Tr. 20). Thus, the ALJ found Plaintiff was not disabled. (Tr. 21).

## V. PLAINTIFF'S MEDICAL RECORDS AND PERSONAL HISTORY

At the time of his hearing, Plaintiff was 47 years old and had not worked for a few years. (Tr. 66). He resides with his wife at his sister-in-law's home; the sister-in-law covers the bills while Plaintiff and his wife take care of the food, cleaning, and yard work. (Tr. 66-68). He did not graduate from high school but later obtained his GED. (Tr. 67). Plaintiff's wife receives disability benefits for her bipolar disorder. (Tr. 68).

When asked about his medical impairments, Plaintiff noted that he does not have any physical challenges but just does not "have the energy" to work. (Tr. 71). He explained that he loses focus, sometimes taking 30 minutes to brew a simple pot of coffee, and "just always feels like [he's] in a daze." (Tr. 72). Plaintiff grew up in a difficult environment in which his father

5

physically abused him. (Tr. 365). To this day, Plaintiff "must be aware of where people's hands are at all times" and has anxiety when around others. (Tr. 365-66).

The medical records available to the ALJ start in early 2017, when Plaintiff began visiting Dr. Courtney Johnson of the Community Counseling Center. In various instances, Plaintiff was found by Dr. Johnson to be alert, oriented, cooperative, calm, and pleasant. (Tr. 240, 244, 246, 248, 250). During a psychiatric evaluation with Dr. Johnson, however, Plaintiff reported irritable mood, low energy, decreased interests, and feeling nervous, all while appearing disheveled and tremulous. (Doc. 17-1 at ¶ 10). In follow-on appointments with Dr. Johnson, Plaintiff consistently had irritable mood (*Id.* at ¶¶ 14-18) but also showed "fair insight" and "intact cognitive functioning." (Doc. 18-2 at ¶¶ 13-14).

On June 10, 2019, Plaintiff received a psychiatric evaluation from Dr. Jerry Cunningham. (Doc. 17-1 at ¶ 30). Plaintiff reported experiencing PTSD, anxiety, depression, and insomnia. (*Id.*). Plaintiff drove himself to the examination and presented with adequate hygiene and dress; he displayed adequate speech, was not tangential in conversation, was mostly cooperative, and gave adequate effort. (Doc. 18-2 at ¶ 24). Dr. Cunningham concluded that Plaintiff has generalized anxiety disorder, major depressive disorder, and antisocial personality disorder (Doc. 17-1 at ¶ 30) but found Plaintiff no longer actively suffered from PTSD. (Doc. 18-2 at ¶ 25).

**VI.   DISCUSSION**

In seeking judicial review of the Commissioner's decision, Plaintiff primarily makes two arguments. First, Plaintiff argues that the ALJ failed to include all relevant limitations in the RFC, namely those identified by the psychological consultative examiner. Second, Plaintiff argues that the ALJ improperly evaluated Plaintiff's subjective reports of his disabilities. This Court will

address each argument while also considering whether the Commissioner's decision is generally supported by substantial evidence.

    A.  <u>RFC and the Consultative Psychological Examination</u>

Dr. Jerry Cunningham, PsyD, performed a consultative psychological examination of Plaintiff on June 10, 2019 and subsequently submitted a Medical Source Statement to the SSA. (Tr. 365-80). Among other findings, Dr. Cunningham concluded that Plaintiff had moderate to marked limitations in his ability to interact appropriately with supervisors. (Tr. 375). Dr. Cunningham also diagnosed Plaintiff as having generalized anxiety disorder, major depressive disorder, and antisocial personality disorder, but found that Plaintiff no longer qualified as having PTSD. (Doc. 17-1 at ¶ 30; Doc. 18-2 at ¶ 25). The ALJ determined that Dr. Cunningham was "highly qualified" and that his opinions were "largely consistent with the weight of the current record" and "very persuasive." (Tr. 19). Plaintiff argues that remand is required because, despite these findings, the ALJ failed to include all limitations identified by Dr. Cunningham in the RFC or explain why such limitations were omitted. (Doc. 17 at 2-3).

SSA regulations provide that an RFC assessment "must always consider and address medical source opinions," and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (Soc. Sec. Admin. July 2, 1996). In *Gann v. Berryhill*, the Eighth Circuit reversed and remanded where the ALJ's RFC failed to include "limitations described by sources to whom the ALJ gave 'significant weight.'" 864 F.3d 947, 953 (8th Cir. 2017); *see also Crews-Cline v. Colvin*, Case No. 4:13-CV-00723-NKL, 2014 WL 2828894, at *2 (W.D. Mo. June 23, 2014) ("Having adopted Dr. Bleazard's opinions as the basis for her RFC determination and affording his opinion alone 'great weight,' the ALJ offers no explanation as to why only certain limitations

are incorporated in the RFC while others are not."). Per this clear precedent and the applicable regulations, remand is warranted if the ALJ declined to incorporate limitations identified by Dr. Cunningham in the RFC and failed to explain his reasoning for doing so.

This Court finds, however, that the ALJ's RFC properly accounted for those limitations identified in Dr. Cunningham's report. Dr Cunningham found that Plaintiff had moderate limitations interacting with the public, interacting with co-workers, and responding appropriately to usual work situations and changes in a routine work setting. (Tr. 375). Dr. Cunningham also found that Plaintiff had moderate to marked limitations (both are circled) interacting appropriately with supervisors. (Id.). The ALJ's opinion specifically notes, citing Dr. Cunningham's Medical Source Statement, that Plaintiff "reports significant problems being around others" and has moderate limitation in interacting with public. (Tr. 15, 19). The ALJ also cited evidence, however, that Plaintiff was "cooperative, appropriate, and alert" at numerous medical examinations and "interact[s] effectively with others during his activities of daily living" (Tr. 15). Indeed, Plaintiff noted in his own function report that he gets along "just fine" with authority figures "until they get irrational or disrespectful" and that he has never been fired from a job due to problems getting along with others. (Tr. 176).

The ALJ's RFC includes non-exertional limitations consistent with Dr. Cunningham's assessment. Per the RFC, Plaintiff is limited to work involving routine tasks and simple decisions, cannot interact with the public, and can "only occasionally interact with coworkers and supervisors." (Tr. 16). This Court finds that the limitations in the RFC are consistent with the ALJ's determination that Dr. Cunningham's opinion was "very persuasive." Courts in this district have frequently held that an ALJ properly accounted for a medical opinion finding moderate to marked limitations interacting with others by limiting a claimant to no more than occasional interaction with supervisors. *See, e.g.*, *Delmater v. Berryhill*, Case No. 2:16-CV-70-SPM, 2018

WL 1508868, at *7 (E.D. Mo. Mar. 27, 2018) ("Dr. Goldman's opinion regarding Plaintiff's limited ability to interact appropriately with others is partially accommodated by the limitation in the RFC to work involving only occasional interactions with the public and coworkers."); *Becherer v. Colvin*, Case No. 4:12-CV-2356-ACL, 2014 WL 4230906, at *14 (E.D. Mo. Aug. 26, 2014) ("The ALJ summarized that Dr. Eyman found Plaintiff had 'moderate to marked' limitations in the broad category of social functioning and accordingly limited Plaintiff to no more than occasional interaction with supervisors, co-workers, and the general public. Consequently, the ALJ did incorporate Dr. Eyman's finding regarding Plaintiff's marked limitations."). The ALJ went a step further by limiting Plaintiff to no interaction with the public. (Tr. 16).

Courts have similarly found that an RFC limiting a claimant to simple, routine tasks sufficiently accounts for moderate difficulty responding to usual work situations and changes in routine work settings. *See Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) ("Moderate difficulties in the areas noted are consistent with being able to understand, remember, and carry out simple instructions while performing non-detailed tasks."); *Goudeau v. Saul*, Case No. 4:19-cv-02476 SRC, 2020 WL 7023936, at *5 (E.D. Mo. Nov. 30, 2020); *Timmons v. Berryhill*, Case No. 4:16-CV-01597 JAR, 2018 WL 1541781, at *4 (E.D. Mo. Mar. 29, 2018) ("[Claimant] asserts that she has marked limitations with responding to work situations or changes in routine. The ALJ accounted for those limitations by crafting an[] RFC that limits [claimant] to simple unskilled work.").[2]

---

[2] The Court recognizes that certain courts have reached a different conclusion. *See, e.g.*, *Miller v. Saul*, Case No. 1:18-CV-255 PLC, 2020 WL 3172478, at *7 (E.D. Mo. June 15, 2020) (limitation to simple, routine tasks did not account for physician's assessment of inability to respond appropriately to changes in the workplace). The Court notes, however, that *Miller* involved a treating physician opinion and applied regulations requiring that good reasons be given for the weight afforded a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). Given the particular factual circumstances of this case, the Court finds that the RFC appropriately incorporates Dr. Cunningham's opinion.

The Court notes, moreover, that an ALJ "is not required to adopt all limitations proposed by a doctor, even if that doctor's opinion is accorded significant weight." *Cannady v. Colvin*, No. 4:14-CV-00372-NKL, 2015 WL 139762, at *5 (W.D. Mo. Jan. 12, 2015). As the Eighth Circuit has explained, an ALJ need not "mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). The ALJ thoroughly assessed medical evidence and subjective information from Plaintiff regarding his ability to interact with others and respond to work situations. The ALJ considered, for example, that Plaintiff was able to "live with others, take care of others, manage his personal care, prepare meals, perform certain household chores, go outside, ride in a car, drive, shop, manage his finances, pursue hobbies, and spend time with others, and attend religious services." (Tr. 18). In terms of Plaintiff's medical records, the ALJ cited evidence that Plaintiff's depressive disorder was only mild (according to Dr. Cunningham) and that Plaintiff only reported "intermitted anxiety" associated with public and social situations. (Tr. 17). The ALJ also properly noted that Plaintiff had not always complied with medical treatment or recommendations. (Tr. 18).

Based on this careful review of the record, "with particular emphasis on the [Plaintiff's] treatment notes and findings by" Dr. Cunningham, the ALJ determined that Plaintiff only has a moderate level of mental health limitations and "maintains the ability to perform unskilled work with some limitations in his social interactions." (*Id.*). Plaintiff's argument, therefore, fails for two reasons. First, the Court finds that the RFC does incorporate the limitations identified by Dr. Cunningham. Second, to the extent an argument can be made that the limitations are not incorporated, the ALJ has explicitly relied on clear evidence in the record for making such a judgment. While the ALJ arguably could have been more explicit regarding any potential disagreement with Dr. Cunningham's opinion, the RFC properly accounts for Dr. Cunningham's diagnoses and is supported by substantial evidence in the record. This Court cannot say that the

RFC "falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015).

    B.  <u>Plaintiff's Subjective Reports</u>

Plaintiff argues that the ALJ "did not provide a meaningful analysis" of his subjective reports. An ALJ may not "disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)). Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010); *see also Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). This Court defers to the ALJ's assessment of the Plaintiff's subjective complaints if that assessment is supported by "good reasons and substantial evidence," *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018), and "will not substitute its opinion for the ALJ's." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *see also* SSR 16-3p, 2017 WL 5180304, at *6 (Soc. Sec. Admin. Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate whether the statements are consistent with the objective medical evidence and other evidence.").

The ALJ concluded that Plaintiff's statements regarding the "intensity, persistence, and limiting effects" of his major depressive disorder and generalized anxiety disorder "are inconsistent with the weight of the record." (Tr. 17). Citing Dr. Cunningham's findings, the ALJ noted that Plaintiff denied suicidal ideation, homicidal ideation, auditory hallucinations, persecutory delusions, symptoms of mania, and paranoid beliefs. (*Id.*). The ALJ made a similar finding regarding Plaintiff's antisocial personality disorder and PTSD, relying on Plaintiff's statement that he can get along with authority figures and evidence from the medical record that

11

Plaintiff only had an "intermittent irritable mood." (Tr. 17-18). *See Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) (ALJ may discount subjective complaints that conflict with medical records).

Plaintiff's self-reported activities of daily living provided additional reasons for the ALJ to discount Plaintiff's assessment of his disabilities. The record reflected that Plaintiff could live with others, take care of his wife, manage his personal care, and attend religious services, among other activities. (Tr. 18). The ALJ reasonably concluded that many of the "skills necessary to perform these activities are similar to those required for full-time competitive employment" and that this "range of activity is not entirely consistent with a finding of more than moderate mental health limitations." (*Id.*). *See Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) (claimant's activities of daily living provided valid reason to discredit disability assessment).

Finally, the ALJ considered that Plaintiff did not always comply with medical treatment or recommendations and noted that many of Plaintiff's impairments were amenable to treatment. (Tr. 18); *see* SSR 16-3p, 2017 WL 5180304, at *9 (Soc. Sec. Admin. Oct. 25, 2017) (Commissioner may find persistence and intensity of symptoms inconsistent with record if claimant "fails to follow prescribed treatment that might improve symptoms."). The Court acknowledges, as Plaintiff argues, that there few instances of non-compliance and "it is not unusual that there would be some period of improvement followed by an increase in symptoms." (Doc. 17 at 8-9).

The ALJ thoroughly reviewed Plaintiff's medical records and self-described activities of daily living when assessing Plaintiff's subjective reports. As to each statement by the ALJ questioning the extent of Plaintiff's disability, Plaintiff essentially responds that there is substantial evidence in the record supporting his own assessment. But this Court may not reverse merely because substantial evidence would support a contrary outcome or because this Court would have decided differently. *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016); *see also Chesser v.*

*Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) ("If it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision.") (internal quotation omitted). As required by the applicable regulations, the ALJ provided specific reasons when determining the weight given to Plaintiff's subjective reports and cited relevant medical records and statements by Plaintiff. The ALJ's assessment of Plaintiff's subjective reports, contained within a thorough five-page analysis of Plaintiff's RFC, considers the appropriate factors and is supported by substantial evidence.

## VII. CONCLUSION

It is unquestionable, and acknowledged by the ALJ, that Plaintiff suffers from genuinely severe mental impairments that impact his daily living. This Court finds, however, that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and falls within the available zone of choice. The ALJ's opinion contains a thorough review of Plaintiff's voluminous medical records and other relevant evidence. As to Plaintiff's specific arguments, the Court finds that the ALJ's RFC assessment properly incorporates Dr. Cunningham's opinion and provides adequate explanation for any disagreement (to the extent such disagreement exists). The Court also holds that the ALJ's assessment of Plaintiff's subjective reports is supported by substantial evidence and follows the requirements of the applicable SSA regulations. Having found that there was substantial evidence in the record to support the ALJ's determination that Plaintiff is not disabled, the Court will affirm.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED with prejudice**. A separate Judgment will accompany this Memorandum and Order.

Dated this 19th day of January, 2021.

*John A. Ross*
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE